UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation, | Case No. _____ |
| Plaintiff, | |
| v. | |
| LINKED-PC, INC., a Florida corporation, JULIO D. SAAVEDRA, an individual, and ANDRES D. SAAVEDRA, an individual, | |
| Defendants. | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### I.    INTRODUCTION

1.    Linked-PC, Inc. ("Linked-PC") and its principals, Julio Saavedra ("J. Saavedra") and Andres Saavedra ("A. Saavedra") (collectively, "Defendants") distribute refurbished computers installed with infringing and unlicensed Microsoft software. Defendants use counterfeit Microsoft software components to make the software appear genuine, and unlawfully use Microsoft's trademarks to falsely advertise an affiliation with Microsoft in order to convince consumers that they are offering authentic, licensed software. Beginning in at least 2015, Defendants have activated thousands of copies of unlicensed Microsoft software. Defendants' conduct is ongoing and continues to harm Microsoft and its customers. Microsoft brings this action to stop Defendants from installing and selling unlicensed and pirated Microsoft software and trafficking in counterfeit Microsoft software components.

## II.    PARTIES

2.    Microsoft is a Washington corporation with its principal place of business in Redmond, Washington.   Microsoft develops, markets, distributes, and licenses computer software, among other products and services.

3.    Linked-PC, Inc. is a Florida corporation with its principal place of business in Cape Coral, Florida.   Public documents show that Defendants J. Saavedra and A. Saavedra are officers of the company.   As alleged in this Complaint, Linked-PC sold refurbished computers through its own online website, www.linked-pc.com, and several other e-commerce platforms.   Despite advertising that its computers contained genuine, licensed Microsoft software, Linked-PC actually sold pirated software, and even used counterfeit authenticity labels to deceive consumers.

4.    Julio D. Saavedra is an individual who resides in Cape Coral, Florida. J. Saavedra, along with A. Saavedra, owned and operated Linked-PC.  J. Saavedra is one of two key principals behind the widespread sale of pirated Microsoft software and counterfeit Microsoft authenticity labels.  J. Saavedra created, operated, and directed this unlawful operation, and reaped significant financial gains at the expense of Microsoft and its customers.  J. Saavedra is directly liable to Microsoft for the damages alleged in this Complaint.  Alternatively, J. Saavedra had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit from that wrongful conduct.  As such, J. Saavedra is subject to liability for the wrongful conduct alleged herein under principles of secondary liability, including, without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

5.    Andres D. Saavedra is an individual who resides in Cape Coral, Florida. A. Saavedra, along with J. Saavedra, owned and operated Linked-PC.  A. Saavedra is one of two key principals behind the widespread sale of pirated Microsoft software and

counterfeit Microsoft authenticity labels.  A. Saavedra created, operated, and directed this unlawful operation, and reaped significant financial gains at the expense of Microsoft and its customers.  A. Saavedra is directly liable to Microsoft for the damages alleged in this Complaint.  Alternatively, A. Saavedra had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit from that wrongful conduct.  As such, A. Saavedra is subject to liability for the wrongful conduct alleged herein under principles of secondary liability, including, without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

### III.    JURISDICTION & VENUE

6.    The Court has subject matter jurisdiction over Microsoft's claims pursuant to 15 U.S.C. § 1121, 17 U.S.C. § 501, 28 U.S.C. §§ 1331, 1338(a), and 18 U.S.C. § 2318. The Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because this action is between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

7.    The Court has personal jurisdiction over Defendants because each resides in the State, conducts business in the State and a substantial part of Defendants' actions giving rise to this suit occurred in the State.

8.    Venue is proper in this District pursuant to 28 U.S.C. § 1400(a) and 28 U.S.C. § 1391(b)(1) because defendants reside in the District, and 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this suit occurred in the District.

9.    Pursuant to Local Rule 1.02, assignment to the Fort Myers Division is appropriate because Defendants reside in Lee County, and a substantial part of the events giving rise to this suit occurred in that county.

## IV.    FACTS

### A.    The Global Problem of Software Piracy

10.    Software developers lose billions of dollars in annual revenue from software piracy, namely, the unauthorized and unlawful copying, downloading, and distributing of copyrighted and trademarked software and related components.  It is estimated that 39% of all software used worldwide is not properly licensed.[1]  The commercial value of this unlicensed software is $52.2 billion, which results in direct losses by the companies that develop these programs.  But software developers, like Microsoft, are not the only victims of software piracy.  Consumers are also victims because they face the likely threat that the software will stop working (i.e., will be deactivated) at some point in time.  Consumers may also not receive the proper support and updates to the software.

11.    A 2015 study conducted by the International Data Corporation (IDC), revealed a strong statistical correlation between the use of unlicensed software and cybersecurity threats.  As such, customers who are deceived by distributors of pirated software not only do not receive genuine versions of the software (i.e., what they paid for), but may unwittingly expose themselves to security risks that would not be present had they received fully licensed software.  *See* Federal Bureau of Investigation, *Consumer Alert: Pirated Software May Contain Malware*, Aug. 1, 2013, at https://www.fbi.gov/news/stories/pirated-software-may-contain-malware1  (noting the relatively greater risk that pirated software is infected with malicious software, or "malware," which can be used to record keystrokes and thus capture sensitive information such as user names, passwords, and Social Security numbers).

---

[1] *See* BSA | The Software Alliance, *Seizing Opportunity through License Compliance:  BSA Global Software Survey*, May 2016, at http://globalstudy.bsa.org/2016/downloads/studies/BSA_GSS_US.pdf.

12.     Legitimate businesses selling genuine software are also harmed.   The distribution of pirated software is fueled by discounted prices.   These low prices induce customers to purchase from websites and companies like those run by Defendants rather than legitimate sellers.   Legitimate resellers cannot compete with the prices offered by those selling pirated software.

B.     **Microsoft's Intellectual Property**

13.     Microsoft develops, advertises, markets, distributes, and licenses a number of computer software programs.

14.     Microsoft licenses its software and does not sell the software itself.   In other words, no title to Microsoft software passes to a user when he or she purchases a license for a Microsoft software program.

15.     Microsoft develops, advertises, markets, distributes, and licenses the following software programs, among others:

a)     **Windows 7:** Microsoft has developed and, currently advertises, markets, distributes, and licenses, a computer operating system called Microsoft Windows 7 ("Windows 7").   Windows 7 is available in a number of different versions including Windows 7 Ultimate, Windows 7 Professional, Windows 7 Home Premium, and Windows 7 Enterprise. Microsoft holds a valid copyright in Windows 7 Ultimate, the most expansive version of Windows 7.   As a result, Microsoft's copyright in Windows 7 Ultimate encompasses all other versions of Windows 7.   Microsoft's copyright in Windows 7 Ultimate was duly and properly registered with the United States Copyright Office.   A true and correct copy of the Registration Certificate for Microsoft Windows 7 Ultimate, bearing the number TX 7-009-361, is attached as Exhibit 1.

b)     **Windows 8.1:** Microsoft has developed and, currently advertises, markets, distributes, and licenses, a computer operating system called Microsoft

Windows 8.1 ("Windows 8.1").  Windows 8.1 is available in a number of different versions, each of which includes certain combinations of products, programs, and features.  Versions of Windows 8.1 include Windows 8.1, Windows 8.1 Professional, and Windows 8.1 Enterprise. Microsoft holds a valid copyright in Windows 8.1 Professional, the most expansive version of Windows 8.1.  As a result, Microsoft's copyright in Windows 8.1 Professional encompasses all other versions of Windows 8.1. Microsoft's copyright in Windows 8.1 Professional was duly and properly registered with the United States Copyright Office.  A true and correct copy of the Registration Certificate for Microsoft Windows 8.1 Professional, bearing the number TX 7-740-672, is attached as Exhibit 2.

c) **Windows 10:** Microsoft has developed and, currently advertises, markets, distributes, and licenses, a computer operating system called Microsoft Windows 10 ("Windows 10").  Windows 10 is available in a number of different versions, each of which includes certain combinations of products, programs, and features.  Versions of Windows 10 include Windows 10 and Windows 10 Professional. Microsoft holds a valid copyright in Windows 10 Professional, the most expansive version of Windows 10.  As a result, Microsoft's copyright in Windows 10 Professional encompasses all other versions of Windows 10.  Microsoft's copyright in Windows 10 Professional was duly and properly registered with the United States Copyright Office.  A true and correct copy of the Registration Certificate for Microsoft Windows 10 Professional, bearing the number TX 8-058-526, is attached as Exhibit 3.

d) **Office 2013:** Microsoft has developed and, currently advertises, markets, distributes, and licenses, a suite of productivity software for business, home, and educational use called Microsoft Office 2013 ("Office 2013").  Office 2013 is available in a number of different versions, each of which includes certain combinations of

6

products, programs, and features.   Versions of Office 2013 include Office 2013 Professional, Office 2013 Home and Business, and Office 2013 Home and Student. Microsoft holds a valid copyright in Office 2013 Professional Plus, the most expansive version of Office 2013.   As a result, Microsoft's copyright in Office 2013 Professional encompasses all other versions of Office 2013.   Microsoft's copyright in Office 2013 Professional was duly and properly registered with the United States Copyright Office.   A true and correct copy of the Registration Certificate for Office 2013 Professional, bearing the number TX 7-649-882, is attached as Exhibit 4.

16.     Microsoft has developed and, currently advertises, markets, distributes, and licenses, the above software and related components using various trademarks and service marks, and uses these marks to distinguish Microsoft's software and related components from the software or products of others in the same field or related fields. Relevant to this case, Microsoft has duly and properly registered a number of trademarks and service marks in the United States Patent and Trademark Office on the Principal Register, including without limitation:

a)     "MICROSOFT," Trademark and Service Mark Registration No. 1,200,236, for computer programs and computer programming services;

b)     "MICROSOFT (STYLIZED) AND DESIGN," Trademark and Service Mark Registration No. 4,552,363, for computer programs and manuals;

c)     "MICROSOFT DESIGN (COLOR)," Trademark and Service Mark Registration No. 4,560,827, for computer programs and manuals;

d)     "WINDOWS," Trademark Registration No. 1,872,264, for computer programs and manuals sold as a unit;

e)     "FLAG DESIGN TWO (B/W)," Trademark Registration No. 2,738,877, for computer software;

f)      "FLAG DESIGN TWO (COLOR)," Trademark Registration No. 2,744,843, for computer software;

g)      "FLAG DESIGN 2012," Trademark Registration No. 4,400,958, for computer software;

h)      "WINDOWS 8 PACKAGING," Trademark Registration No. 4,476,005, for computer operating system software;

i)      "WINDOWS STORE TILE," Trademark Registration No. 4,552,497, for operating system software;

j)      "VIDEO TILE," Trademark Registration No. 4,412,218, for computer software for downloading and viewing video content;

k)      "SPORTS TILE," Trademark Registration No. 4,426,632, for computer software for viewing information and content about sports;

l)      "MAPS TILE," Trademark Registration No. 4,415,985, for computer software for mapping and directions;

m)      "GAMES TILE," Trademark Registration No. 4,444,995, for computer software enabling access to online games;

n)      "CHARM BAR," Trademark Registration No. 4,489,348, for computer software operating system;

o)      "CAMERA TILE," Trademark Registration No. 4,415,986, for computer software for accessing and managing camera functions;

p)      "MUSIC TILE," Trademark Registration No. 4,426,630, for computer software for downloading and listening to music and other audio content;

q)      "MESSAGING TILE," Trademark Registration No. 4,426,631, for computer software for text and multimedia messaging;

r)      "SPORTS TILE," Trademark Registration No. 4,426,632, for computer software for viewing information and content about sports;

s)      "MICROSOFT OFFICE," Trademark Registration No. 3,625,391, for computer productivity software;

t)      "OFFICE 2012 DESIGN," Trademark Registration No. 4,459,826, for computer productivity software;

u)      "OFFICE WITH OFFICE 2012 DESIGN," Trademark Registration No. 4,456,462, for computer productivity software;

v)      "ACCESS," Trademark Registration No. 3,238,869, for computer database management software;

w)      "ACCESS LAUNCH ICON (2012)," Trademark Registration No. 4,365,955, for computer database management software;

x)      "EXCEL," Trademark Registration No. 2,942,050, for computer spreadsheet software;

y)      "EXCEL LAUNCH ICON 2012," Trademark and Service Mark Registration No. 4,355,451, for computer software for spreadsheets;

z)      "OUTLOOK," Trademark Registration No. 2,188,125, for computer programs for providing enhanced electronic mail and scheduling capabilities;

aa)     "OUTLOOK LAUNCH ICON 2012," Trademark Registration No. 4,355,446, for computer programs for providing enhanced electronic mail and scheduling capabilities;

bb)     "PUBLISHER LAUNCH ICON 2012," Trademark Registration No. 4,355,448, for desktop publishing software;

cc)     "ONENOTE," Trademark Registration No. 2,844,710, for computer software for use in note taking;

dd)     "ONENOTE LAUNCH ICON 2012," Trademark Registration No 4,351,584, for computer software for use in note taking;

ee)     "POWERPOINT," Trademark Registration No. 1,475,795, for computer software programs for creating presentations, graphics and videos;

ff)     "POWERPOINT LAUNCH ICON 2012," Trademark Registration No. 4,385,388, for computer software programs for creating presentations, graphics and videos; and

gg)     "WORD LAUNCH ICON 2012," Trademark Registration No. 4,355,444, for word processing software.

True and correct copies of the Trademark Registrations for (a) through (gg) above are attached as Exhibits 5 through 37, respectively.

### C.     Microsoft's Distribution Channels for Software

17.     Microsoft distributes its software through a number of distribution channels, including the Original Equipment Manufacturer (OEM), volume and academic licensing, subscriptions, and refurbisher channels.

18.     The Original Equipment Manufacturer ("OEM") distribution channel is one through which Microsoft software is distributed to computer and device manufacturers called OEMs.  OEMs customarily pre-install software on the devices they build including, most commonly, a Microsoft Windows operating system.

19.     The OEM distribution channel involves sub-channels that supply Microsoft software to different categories of OEMs.  Two of these sub-channels are the Commercial OEM channel and the Direct OEM channel.

20.     Through the Commercial OEM ("COEM") channel, Microsoft supplies what is called "system builder" software to small and medium-sized OEMs for pre-

installation on devices.  This software is required to be individually activated on each device.

21.     Through the Direct OEM ("DOEM") channel, Microsoft directly provides software to large computer manufacturers, such as Dell and Lenovo, for pre-installation on devices.  The DOEMs acquire some components associated with the Microsoft software from Microsoft Authorized Replicators ("ARs").

22.     In addition to the OEM channel, Microsoft offers a number of programs through which it provides software to qualified members including the Microsoft Registered Refurbisher Program ("RRP") and the Microsoft Authorized Refurbisher ("MAR") program.

23.     The Microsoft Refurbisher programs allow members to offer their customers additional value by pre-installing genuine Microsoft software on refurbished computers.  Members of the Microsoft refurbisher programs are required to affix a Program Certificate of Authenticity ("COA") on each refurbished system.  Program COA labels may not be sold separately from refurbished systems.

24.     The RRP is for small and medium sized refurbishers that supply refurbished computer systems to consumers and businesses through commercial licenses and to educational institutions, non-profit charitable organizations, or government programs through citizenship licenses.  RRP members must sign a RRP Agreement, and a Logo License Agreement if they wish to display Microsoft logos associated with the program.

25.     The MAR program is for large refurbishers who meet a minimum average threshold of refurbished PCs shipped per month.  Refurbishers in the program professionally refurbish desktop and laptop computers and servers with genuine Microsoft software.  MAR members must sign a MAR Program License Agreement, and

a Logo License Agreement if they wish to display Microsoft logos associated with the program.

### D.   Product Activation

26.   Like many software developers, Microsoft has implemented a wide-range of initiatives to protect its customers and combat theft and infringement of its intellectual property.   One important element of Microsoft's anti-piracy technology is product activation which involves the activation of software through product activation keys.

27.   A Microsoft product activation key is a 25-character alphanumeric string generated by Microsoft and provided to customers and OEMs.   When customers and OEMs install certain Microsoft software on a device, they are required to enter a product activation key.   As part of the activation process, customers and, in some cases, OEMs voluntarily contact Microsoft's activation servers over the Internet and transmit their product keys and other technical information about the device to the activation servers.

28.   The activation process is analogous to the activation of credit cards or mobile phones with a code provided by the financial institution or the mobile carrier. Because Microsoft's copyrighted software is capable of being installed on an unlimited number of computers, Microsoft relies on the product activation process to detect piracy and protect consumers from the risks of non-genuine software.

29.   Product keys are not a software license, nor do they constitute authorization from Microsoft to access or use software without the appropriate license. Product activation is merely technology used by Microsoft to protect its intellectual property—and customers—from piracy and other forms of abuse.

30.   One prevalent form of software piracy is the unauthorized and unlawful use of decoupled Microsoft product activation keys that were stolen or acquired by fraud. The global black market for these stolen or fraudulently acquired decoupled product

activation keys generates millions of dollars of illicit revenues for distributors.   In contrast, Microsoft does not sell product activation keys without an accompanying software license.   Microsoft does not authorize the sale or distribution of decoupled product activation keys separately from the software they were originally intended and authorized to activate.

31.     Another prominent form of software piracy is known as "hard-disk loading," which is the unauthorized commercial copying and installation of infringing software on devices that are sold in competition with, and typically for lower prices than, devices pre-installed with legally licensed copies of software.   Under this piracy scheme, refurbishers (or anyone else) obtain a copy of software (oftentimes a legal and fully-licensed copy), and then illegally reproduce that software onto numerous other computer hard drives, which is not authorized by the software license.

### E.     Microsoft's Use of Cyberforensics to Combat Piracy

32.     In order to combat the theft of its software, Microsoft relies on state-of-the-art technology to detect software piracy called "cyberforensics."

33.     Through cyberforensics, Microsoft analyzes activation data voluntarily provided by users when they activate Microsoft software, including the IP address from which a given product is activated.   An IP address is a numerical identifier used to identify an internet-capable device when the device is connected to the Internet.   An IP address is ordinarily assigned to an internet user (whether an individual or an entity) by the user's Internet Service Provider ("ISP").

34.     Cyberforensics allows Microsoft to analyze billions of activations of Microsoft software and identify activation patterns and characteristics that make it more likely than not that the IP address associated with the activations is an address through which pirated software is being activated.

**F.      Defendants' Sale of Unlicensed Microsoft Software and Trafficking of Counterfeit COAs**

35.      Defendants sell refurbished computers loaded with unlicensed Microsoft software and counterfeit COA labels through multiple channels, including accounts on e-commerce platforms eBay and Amazon.  Since at least 2015, Defendants have activated thousands of copies of unlicensed Microsoft software and trafficked in counterfeit COA labels.  This conduct is ongoing and continues to harm Microsoft and its customers.

**1.      Defendants' Distribute Computers Installed with Infringing Microsoft Software.**

36.      For a number of years, Defendants ran the website www.linked-pc.com, and operated seller accounts on popular ecommerce platforms eBay (formerly under the name "linkedpc" and now under the name "online-electronics") and Amazon.com (formerly called Linked PC and now called "Computer Online").  Through these websites, Defendants advertised, marketed, and sold refurbished computers that contained infringing and unlicensed Microsoft software.

37.      Defendants used a number of Microsoft trademarks and service marks (including those identified above), all of which were used without Microsoft's permission or authority.  Defendants did this to deceive consumers into believing that Defendants provide genuine, licensed Microsoft software, and are otherwise sponsored by or affiliated with Microsoft—which they are not.

38.      From approximately March 2014 to October 2016, Linked-PC was a member of Microsoft's Registered Refurbisher Program ("RRP").  After October 2016, Linked-PC was not an RRP, but Defendants continued to falsely advertise they were members of this Microsoft program.

39.      On August 10, 2017, an investigator working on behalf of Microsoft purchased what was advertised as a refurbished Dell computer installed with Windows 7 Professional software from Defendants' Amazon seller account, Linked PC.  The product

description specifically stated:  "Windows 7 Professional 64 bit, Activation code is on the tower; the best operating system for business."

40.     An analysis of the computer received from Defendants revealed that it was hard disk loaded with an infringing copy of Windows 7 Professional.  Defendants also supplied a counterfeit COA label on a separate sheet of paper which contained a Microsoft product key that did not match the product key used to activate the Microsoft software installed on the computer.

41.     Defendants' distribution of refurbished computers loaded with infringing Microsoft software is further established by Microsoft's cyberforensics data from the IP addresses Defendants used to unlawfully activate Microsoft software:  IP addresses 73.28.34.136 and 73.156.69.83 (collectively "Infringing IP Addresses").

42.     Microsoft's cyberforensics determined that beginning in approximately October 2015, and continuing until at least August 2017, Defendants activated or attempted to activate thousands of copies of unlicensed and pirated Microsoft Office 2013, Windows 10, Windows 8.1, and Windows 7 software from the Infringing IP Addresses with product keys that were:

   a)     used more times than authorized by the applicable software license;

   b)     stolen from Microsoft's supply chain; and/or

   c)     used for the activation, or attempted activation, of software outside of the region for which they were intended.

43.     Each of these activations and attempted activations constitutes the unauthorized copying of Microsoft software, in violation of Microsoft's software licenses and its intellectual property rights.

**2.      U.S. Customs and Border Protection Seized Defendants'
Shipment of Counterfeit COA Labels from China.**

44.      On or around August 15, 2017, the U.S. Customs and Border Protection ("CBP") seized a shipment of 200 COA labels purporting to be for Microsoft Windows 10 Professional.  The shipment originated in Tianjin, China, and entered the United States through FedEx's Anchorage, AK facility.  CBP identified the importer of the labels as Linked PC.

45.      The COA labels were not associated with any Microsoft software or any hardware with Microsoft software installed.  Microsoft has determined that these COA labels are counterfeit.

### V.      CAUSES OF ACTION

#### First Claim
#### Copyright Infringement — 17 U.S.C. §§ 501 *et seq.*

46.      Microsoft specifically realleges and incorporates by reference Paragraphs 1 through 45 in the Complaint as though fully set forth in this Claim.

47.      Microsoft is the sole owner of Microsoft Office 2013, Windows 10, Windows 8.1, and Windows 7, and of the corresponding copyrights and Certificates of Registration with the registration numbers listed above.

48.      Defendants have infringed Microsoft's copyrights by reproducing Microsoft software in the United States of America without approval or authorization from Microsoft.

49.      At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, Microsoft's registered copyrights.

50.      As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages and Defendants' profits attributable to the infringement. Alternatively, Microsoft is entitled to statutory damages under 17 U.S.C. § 504(c).

51.     The award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

52.     Microsoft is further entitled to injunctive relief and an order impounding all infringing materials.   Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) Microsoft's copyrights are unique and valuable property which have no readily determinable market value; (b) Defendants' infringement harms Microsoft such that Microsoft could not be made whole by any monetary award; and (c) Defendants' wrongful conduct, and the resulting damage to Microsoft, is continuing.

**<u>Second Claim</u>**
**Trademark Infringement — 15 U.S.C. § 1114**

53.     Microsoft specifically realleges and incorporates by reference Paragraphs 1 through 45 in the Complaint as though fully set forth in this Claim.

54.     Defendants' activities constitute infringement of Microsoft's federally registered trademarks and service marks with the registration numbers listed above.

55.     Microsoft advertises, markets, distributes, and licenses its software and related components under the trademarks and service marks described above and uses these trademarks and service marks to distinguish Microsoft's products from the software and related items of others in the same or related fields.

56.     Because of Microsoft's long, continuous, and exclusive use of these trademarks and service marks, they have come to mean, and are understood by customers, end users, and the public to signify, software programs and related components or services of Microsoft.

57.     The infringing materials that Defendants have and are continuing to install are likely to cause confusion, mistake, or deception as to their source, origin, or authenticity.

58.     Further, Defendants' activities are likely to lead the public to conclude, incorrectly, that the infringing materials that Defendants are installing originate with or are authorized by Microsoft, thereby harming Microsoft, its licensees, and the public.

59.     At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, Microsoft's registered marks.

60.     As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages, Defendants' profits attributable to the infringement, and treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117 (a) and (b). Alternatively, Microsoft is entitled to statutory damages under 15 U.S.C. § 1117(c).

61.     Microsoft is further entitled to injunctive relief and an order compelling the impounding of all infringing materials.  Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) Microsoft's trademarks and service marks are unique and valuable property that have no readily determinable market value; (b) Defendants' infringement constitutes harm to Microsoft's reputation and goodwill such that Microsoft could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing materials; and (d) Defendants' wrongful conduct, and the resulting harm to Microsoft, is continuing.

### Third Claim
### Trafficking in Counterfeit COA Labels — 18 U.S.C. § 2318

62.     Microsoft specifically realleges and incorporates by reference Paragraphs 1 through 45 in the Complaint as though fully set forth in this Claim.

63.     Microsoft is the sole owner of numerous software programs, including Microsoft Office 2013, Windows 10, Windows 8.1, and Windows 7, and of the

corresponding copyrights and Certificates of Registration with the registration numbers listed above.

64.     Microsoft designs, creates and uses Certificates of Authenticity ("COA") labels in connection with genuine copies of Microsoft software.  These COA labels are designed to be affixed to, enclosed with, or accompany Microsoft's computer software programs for purposes of verifying that the software is not counterfeit or infringing of Microsoft's copyrights.

65.     As detailed above, Defendants knowingly transported, transferred, or otherwise disposed of counterfeit or illicit Microsoft COA labels to other persons for purposes of commercial advantage or private financial gain.

66.     As a result of Defendants' wrongful conduct, and pursuant to 18 U.S.C. § 2318(e), Microsoft is entitled to recover its actual damages and any additional profits earned by Defendants.  Alternatively, Microsoft may elect, at any time before final judgment is rendered, to recover statutory damages for each violation of 18 U.S.C. § 2318(a).  Microsoft is also entitled to its reasonable attorneys' fees and costs.

67.     Microsoft is further entitled to injunctive relief and an order compelling the impounding of any article in Defendants' possession that was involved in a violation of 18 U.S.C. § 2318(a).  Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) Defendants' conduct constitutes harm to Microsoft's reputation and goodwill such that Microsoft could not be made whole by any monetary award; (b) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing materials; and (c) Defendants' wrongful conduct, and the resulting harm to Microsoft, is continuing.

## Fourth Claim

### False Designation of Origin, False Description and Representation of Microsoft Packaging and Programs — 15 U.S.C. §§ 1125 *et seq.*

68.     Microsoft specifically realleges and incorporates by reference Paragraphs 1 through 45 in the Complaint as though fully set forth in this Claim.

69.     Microsoft advertises, markets, distributes, and licenses its software and related components under the trademarks and service marks described above, and uses these marks to distinguish Microsoft's software and related components from the software or products of others in the same field or related fields.

70.     Because of Microsoft's long, continuous, and exclusive use of the trademarks and service marks, they have come to mean, and are understood by customers, end users, and the public to signify, software or services of Microsoft.

71.     Microsoft has also designed distinctive and aesthetically pleasing displays, logos, icons, graphic images, and packaging (collectively, "Microsoft visual designs") for its software programs and related components as well as its licensing programs.

72.     On information and belief, Defendants' wrongful conduct includes the use of Microsoft's marks, name, and/or imitation visual designs (specifically displays, logos, icons, graphic designs, and/or packaging virtually indistinguishable from Microsoft visual designs) and representation of affiliation with Microsoft's RRP program in connection with Defendants' commercial advertising or promotion, including without limitation, in connection with the offering for sale and sale of unlicensed Microsoft software in interstate commerce.

73.     Defendants have used, and continue to use, the trademarks and service marks referenced above to compete unfairly with Microsoft and to deceive customers. Upon information and belief, Defendants' wrongful conduct misleads and confuses their customers and the public as to the origin and authenticity of the goods and services

advertised, marketed, installed, offered, or distributed in connection with Microsoft's marks, name, and imitation visual designs, and wrongfully trades upon Microsoft's goodwill and business reputation.  Defendants' conduct constitutes (a) false designation of origin, (b) false or misleading description, and (c) false or misleading representation that the imitation visual images originate from or are authorized by Microsoft, all in violation of 15 U.S.C. § 1125(a).

74.     Defendants' wrongful conduct is likely to continue unless restrained and enjoined.

75.     As a result of Defendant's wrongful conduct, Microsoft is entitled to recover its actual damages, Defendants' profits, and treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

76.     Further, Microsoft is entitled to injunctive relief, including an order compelling the impounding of all imitation marks and visual designs being used, advertised, marketed, installed, offered, or distributed by Defendants, and directing Defendants to stop representing or implying that they are members of Microsoft's RRP program and that they are offering licensed Microsoft software.  Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) Microsoft's marks, name, and visual designs are unique and valuable property which have no readily-determinable market value; (b) Defendants' advertising, marketing, installation, or distribution of imitation visual designs constitutes harm to Microsoft such that Microsoft could not be made whole by any monetary award; and (c) Defendants' wrongful conduct, and the resulting damage to Microsoft, is continuing.

## Fifth Claim
### Unfair Competition & False Advertising — 15 U.S.C. § 1125(a)

77.     Microsoft specifically realleges and incorporates by reference Paragraphs

1 through 45 in the Complaint as though fully set forth in this Claim.

78.     Defendants have made false and misleading representations and descriptions of fact in connection with the offering for sale and sale of unlicensed Microsoft software, including without limitation, that Defendants are offering licensed Microsoft software.

79.     Defendants' false and misleading representations and descriptions of fact were made in commercial advertising or promotion, including without limitation, in connection with the offering for sale and sale of unlicensed Microsoft software.

80.     Defendants' false and misleading representations and descriptions of fact misrepresent the nature, characteristics, qualities, or origin of their goods, services, and commercial activities.

81.     Defendants' use of Microsoft's copyrights and trademarks referenced above and its false and misleading representations and descriptions of fact in interstate commerce in connection with its offering for sale of unlicensed Microsoft software has either deceived or has the capacity to deceive a substantial segment of potential consumers, and such deception is material, in that it is likely to influence the consumers' purchasing decisions.

82.     Defendants have used, and continue to use, Microsoft's copyrights and trademarks referenced above to compete unfairly with Microsoft and to deceive customers.

83.     Defendants' conduct constitutes false advertising and federal unfair competition, in violation of 15 U.S.C. § 1125(a).

84.     Defendants' wrongful conduct is likely to continue unless restrained and enjoined.

85.     As a result of Defendants' wrongful conduct, Microsoft is entitled to

recover its actual damages, Defendants' profits, and treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

86.     Further, Microsoft is entitled to injunctive relief and to an order directing Defendants to stop representing or implying that they are offering licensed Microsoft software.  Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things:  (a) Defendants' advertising, marketing, installation, or distribution of unlicensed Microsoft software constitutes harm to Microsoft such that Microsoft could not be made whole by any monetary award; and (b) Defendants' wrongful conduct, and the resulting damage to Microsoft, is continuing.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Microsoft respectfully prays for the following relief:

A.     That the Court enter judgment in Microsoft's favor on all claims;

B.     That the Court permanently restrain and enjoin Defendants, their directors, principals, officers, agents, representatives, employees, attorneys, successors and assigns, and all others in active concert or participation with it, from:

(i)     copying or making any other infringing use or infringing distribution of Microsoft's software and other intellectual property including but not limited to the software identified by the trademark, service mark, and copyright registration numbers listed above;

(ii)     manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any Microsoft software or other intellectual property bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of Microsoft's registered trademarks, service mark, or copyrights, including, but not limited to, the trademark, service mark, and copyright registration numbers listed above;

23

(iii)    using any simulation, reproduction, counterfeit, copy, or colorable imitation of Microsoft's registered trademarks, service mark, or copyright including, but not limited to the trademark, service mark, and copyright registration numbers listed above, in connection with the manufacture, assembly, production, distribution, offering for distribution, circulation, sale, offering for sale, import, advertisement, promotion, or display of any software, component, and/or other item not authorized or licensed by Microsoft;

(iv)    engaging in any other activity constituting an infringement of any of Microsoft's trademarks, service marks and/or copyrights, or of Microsoft's rights in, or right to use or to exploit, these trademarks, service marks, and/or copyrights;

(v)    knowingly purchasing, transporting, transferring, or otherwise disposing of counterfeit or illicit Microsoft COA labels; and

(vi)    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed above.

C.    That the Court enter an order pursuant to 15 U.S.C. § 1116 and 17 U.S.C. § 503 impounding all counterfeit and infringing copies of purported Microsoft software and/or materials bearing any of Microsoft's trademarks or service marks, and any related item, including business records, that are in Defendants' possession or under their control;

D.    That the Court enter an order impounding any article in Defendants' possession that was involved in a violation of 18 U.S.C. § 2318(a);

E.    That the Court enter an order declaring that Defendants hold in trust, as constructive trustees for the benefit of Microsoft, the illegal profits obtained from their distribution of counterfeit and infringing copies of Microsoft's software;

F.      That the Court enter an order requiring Defendants to provide Microsoft a full and complete accounting of all amounts due and owing to Microsoft as a result of Defendants' unlawful activities;

G.      That Defendants be required to pay all general, special, actual, and statutory damages which Microsoft has sustained, or will sustain, as a consequence of Defendants' unlawful acts, and that such damages be enhanced, doubled, or trebled as provided for by 17 U.S.C. § 504(c) and 15 U.S.C. § 1117(b);

H.      That Defendants be required to pay to Microsoft both the costs of this action and the reasonable attorneys' fees incurred by Microsoft in prosecuting this action, as provided for by 15 U.S.C. § 1117, 17 U.S.C. § 505, 18 U.S.C. § 2318 and otherwise as provided for by law; and

I.      That the Court grant Microsoft such other, further, and additional relief as the Court deems just and equitable.

DATED this 22nd day of February, 2018.

HOLLAND & KNIGHT LLP
*TRIAL COUNSEL for Plaintiff Microsoft Corp.*

*s/Joseph H. Varner, III*
Joseph H. Varner, III
Florida Bar No. 394904
Kendyl B. Tash
Florida Bar No. 113144
100 North Tampa Street, Suite 4100
Tampa, FL  33602
Tel: (813) 227-8500
Fax: (813) 229-0134
joe.varner@hklaw.com
     Secondary: gloria.mcknight@hklaw.com
kendyl.tash@hklaw.com
     Secondary: christine.yokel@hklaw.com

and

DAVIS WRIGHT TREMAINE LLP
*TRIAL COUNSEL for Plaintiff Microsoft Corp.*

*s/Bonnie E. MacNaughton*
Bonnie E. MacNaughton (*special admission forthcoming*)
James H. Wendell (*special admission forthcoming*)
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
Tel: (206) 622-3150
Fax: (206) 757-7700
bonniemacnaughton@dwt.com
jamiewendell@dwt.com

26