UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO.: 2:18-cv-00121-SPC-MRM

MICROSOFT CORPORATION,
a Washington Corporation

       Plaintiff,

v.

LINKED-PC, INC., a Florida Corporation,
JULIO SAAVEDRA, an individual, and
ANDRES SAAVEDRA, an individual,

       Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT, ECF No. [1]

COMES NOW Defendants, JULIO SAAVEDRA ("J. SAAVEDRA") and ANDRES SAAVEDRA ("A. SAAVEDRA")(collectively referred to as the "Individual Defendants") and LINKED-PC, INC ("Linked-PC")(collectively with the Individual Defendants" as "Defendants"), pursuant to Fed. R. Civ. P. 9 and 12(b)(6), by and through their undersigned attorneys, move for dismissal of Plaintiff's Complaint for Damages and Injunctive Relief, ECF No. [1], and states:

## I.  INTRODUCTION

Plaintiff, MICROSOFT CORPORATION, ("Microsoft"), filed a five-count Complaint against the "Defendants," jointly and severally, seeking damages and injunctive relief alleging violations of copyright, trademark, trafficking, and false advertising. Microsoft

Case 2:18-cv-00121-SPC-MRM   Document 27   Filed 05/07/18   Page 2 of 17 PageID 489

Case No. 2:18-cv-00121-SPC-MRM

admits the "Individual Defendants" are mere corporate officers of "Linked-PC" which itself was an authorized refurbisher of Microsoft's products. ECF No. [1] at pp. 2 and 14.

The Complaint should be dismissed because it constitutes what the Eleventh Circuit has deemed an impermissible "shotgun pleading;" because Microsoft impermissibly attempts to pierce the corporate veil; because Microsoft otherwise so commingles the allegations against the "Individual Defendants" with the allegations against the Corporate Defendant, "Linked-PC," that no reasonable person in response to the Complaint could formulate a response that does not otherwise cause confusion. Additionally, Plaintiff's failure to plead conditions precedent is a fatal flaw requiring dismissal.

## II.  THE COMPLAINT IS A "SHOTGUN PLEADING."

### a.  Legal definition of a "shotgun pleading."

Our Eleventh Circuit of Appeal opined there are generally four types of shotgun pleadings:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.

> The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.

> The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.

> Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

- 2 -
**COLE, SCOTT & KISSANE, P.A.**
LAKESIDE OFFICE CENTER, SUITE 500 - 600 NORTH PINE ISLAND ROAD - PLANTATION, FLORIDA 33324 (954) 473-1112 (954) 474-7979 FAX

> The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Herrera v. City of Hialeah*, 2018 U.S. Dist. LEXIS 67952; *citing to, Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (footnotes omitted).   In this case, Microsoft's Complaint, ECF No. [1], is an example of the second and fourth above-described "shotgun pleadings."

     **b.   Analysis of the complaint.**

The twenty-five (25) page Complaint, ECF No. [1], is comprised of eighty-six (86) enumerated paragraphs divided as follows:

| Paragraphs 1 thru 9 | As pled, these are allegations supporting jurisdiction.[1] | ECF No. [1], pp. 1 thru 3. |
|---|---|---|
| Paragraphs 10 thru 45 | Plaintiff's General Allegations of all facts giving rise to the causes of action. | ECF No. [1], pp. 4 thru 16. |
| Paragraphs 46 thru 52 | Count I - Plaintiff's cause of action for Copyright Infringement. | ECF No. [1], pp. 16 thru 17. |
| Paragraphs 53 thru 61 | Count II - Plaintiff's cause of action for Trademark Infringement. | ECF No. [1], pp. 17 thru 18. |
| Paragraphs 62 thru 67 | Count III - Plaintiff's cause of action for Trafficking in Counterfeit Labels | ECF No. [1], pp. 18 thru 19. |
| Paragraphs 68 thru 76 | Count IV - Plaintiff's cause of action for false designation of origin, false or misleading description of fact, or false or misleading representation of fact. | ECF No. [1], pp. 20 thru 21 |
| Paragraphs 77 thru 86 | Count V – Plaintiff's cause of action for unfair competition and false advertising | ECF No. [1], pp. 21 thru 86. |

---

[1]      In reality, the allegations in paragraph 3 thru 5, work double-time.  They not only support jurisdiction but include allegations which are part of the more "general allegations" pled in paragraphs ten 10 thru 45.

**COLE, SCOTT & KISSANE, P.A.**
LAKESIDE OFFICE CENTER, SUITE 500 - 600 NORTH PINE ISLAND ROAD - PLANTATION, FLORIDA 33324 (954) 473-1112 (954) 474-7979 FAX

In each Count, Microsoft incorporates paragraphs 1 thru 45.  Those allegations include:

a) Reference to and incorporation of a ten (10) page "White Paper," entitled <u>Unlicensed Software and Cybersecurity Threats;</u>[2]

b) Reference to and incorporation of an August 1, 2013, "Consumer Alert" published by the Federal Bureau of Investigations entitled <u>Pirated Software May Contain Malware;</u>[3]

c) A detailed description of various programs manufactured by Microsoft and an itemized listing of trademarks and service marks including "Flag Design," "Windows 8 Packaging," "Video Tile," "Sports Tile," "Maps Tile," "Games Tile," "Charm Bar," Camera Tile," "Music Tile," Messaging Tile," "Sports Tile," etc. (at ECF No. [1], pp. 8 thru 10, paragraphs 16(a) thru 16(gg));

d) Reference to the "Microsoft Registered Refurbisher Program, (RRP);"[4]

e) Reference to the "Microsoft Authorized Refurbisher Program, (MAR); and

f) Reference to, without detailed inclusion, of a Customs and Border Patrol seizure of a parcel from Federal Express at ECF No. [1], p. 16, among others.

### c. **Examples of conclusory, vague, and immaterial facts not obviously connected to any particular cause of action**.

#### i. *The "White Paper."*

Plaintiff's reference and inclusion of the "White Paper" (Exhibit A) is an example of the inclusion of "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." The "White Paper" "analyzes the relationship between unlicensed software use and malware encounters." Exhibit A, at p. 1. To engage in that analysis, the

---

[2]     John F. Gantz, et al., *Unlicensed Software and Cybersecurity Threats* (International Data Corporation (IDC), White Paper, 2015) Microsoft did not provide the paper.  We do. (*See,* Exhibit A).

[3]     Federal Bureau of Investigations, *Pirated Software May Contain Malware* (August 1, 2013), https://www.fbi.gov/news/stories/pirated-software-may-contain-malware1. (Microsoft did not provide the article.  *See*, Exhibit B).

[4]     The Court will observe that in paragraph 38 of the operative Complaint, Microsoft alleges Defendant, "Linked-PC" was a member of the Registered Refurbisher Program. Interestingly, Microsoft did not provide a copy of the RRP agreement. We do. *See* Exhibit C.

authors employ a high-level reference to a study performed by non-party BSA and, more importantly, to a 160-page study authored by the Plaintiff, Microsoft, published in Q2-2013[5] and a 152-page study authored by the Plaintiff, Microsoft, published in Q4-2013.[6]  *See,* Exhibit A, at p. 2, fn. 4.   The author's singular support for their methodology is an unauthored, unverifiable, comparison study between smoking and lung cancer in support of their methodology.  *See,* Exhibit A, at p. 3, fn. 7.[7]

In the Q4-2013 report, Microsoft advises that "Black Hat" researchers and "exploit developers" sell access to vulnerability information and exploit code "to deliver malware to victims' computers for use in illegitimate endeavors such as sending spam, credential theft, and many other profit-making schemes."[8] Microsoft explains that one method of delivery of malware includes the end-users visit to a "compromised webpage" which contains an "exploit landing" which downloads (unknown to the end-user) a software package which infects the end-users computer resulting in data breach and/or ransomware.[9]

---

[5]      Dennis Batchelder, et al., *Microsoft Security Intelligence Report, Volume 15 (January through June, 2013),* attached hereto as Exhibit No. D.

[6]      Dennis Batchelder, et al., *Microsoft Security Intelligence Report, Volume 16 (July through December, 2013)*, attached hereto as Exhibit No. E.

[7]      The World Wide Web/Internet link to the smoking comparison study is http://www3.nd.edu/~busiforc/handouts/Data%20and%20Stories/correlation/smoking%20and%20cancer/smoking.html.  We've taken the liberty of producing the study at Exhibit F.

[8]      Exhibit No. E, at p. 4.

[9]      Exhibit No. E, at p. 11-12.  Microsoft cites to an August 12, 2012, "Krebs on Security" article entitled "Inside a 'Reveton' Ransomware Operation" to explain the technical details. See, https://krebsonsecurity.com/2012/08/inside-a-reveton-ransomware-operation.  Microsoft defines "ransomware" as "a type of malware that prevents use of a computer or access to the data that it contains until the user pays a certain amount to a remote attacker (the "ransom").  Computers that have ransomware installed usually display a screen containing information on how to pay the "ransom." A user cannot usually access anything on the computer

**COLE, SCOTT & KISSANE, P.A.**
LAKESIDE OFFICE CENTER, SUITE 500  - 600 NORTH PINE ISLAND ROAD  - PLANTATION, FLORIDA 33324 (954) 473-1112 (954) 474-7979 FAX

No doubt, the relationship between software (legal and illegal; original and bootleg; original and copied), and the prevalence of malware and ransomware is all very interesting. However, in the case at bar, Microsoft's reference to the "White Paper" as a "fact" in support of its claims against Defendants is a proverbial goose chase. The Court will be hard-pressed to discern in Counts I, II, III, IV or V any allegation that the Defendants, jointly and severally, in any way shape or form;

(i)     Placed into the stream of commerce malware or ransomware; or

(ii)    Used Microsoft's trademarks, copyrights, packaging, and/or programs to place into the stream of commerce malware or ransomware.

Interestingly, Microsoft makes no reference to malware or ransomware vis-à-vis the cyber forensics used to examine the personal computer Plaintiff's agent alleges to have purchased from Defendant, "Linked-PC." ECF No. [1] at p. 14, paragraphs 39 thru 41. It begs the question why the Plaintiff has chosen to take the Court down the "rabbit hole." Irrespective, the inclusion of the "White Paper" is an example of a "shotgun pleading" – the inclusion of conclusory, vague, and immaterial facts not obviously connected to any particular cause of action which requires dismissal of the action.

### ii.     The "Consumer Alert."

The "Consumer Alert," (Exhibit B), is a four (4) page document produced by the National Intellectual Property Rights Coordination (IPR) Center. Like the "White Paper" referenced above, the "Consumer Alert" warns about malware but there is also a warning concerning "counterfeit products made to look authentic;" To-wit;

---

beyond the screen." Exhibit E, p. 128. The Showtime series "Homeland" (Season 7, episode 2) featured an example of ransomware's adverse effects on the character, Carrie Mathison.

**COLE, SCOTT & KISSANE, P.A.**
LAKESIDE OFFICE CENTER, SUITE 500  - 600 NORTH PINE ISLAND ROAD  - PLANTATION, FLORIDA 33324 (954) 473-1112 (954) 474-7979 FAX

> *Pirated software can also be found pre-installed on computers overseas, which are ordered by consumers online and then shipped into the United States.*

Again, while useful and interesting, there no claim asserted the Defendants, jointly or severally, participated in a scheme to purchase computers overseas, ship them into the United States and sell malware or ransomware to unsuspecting consumers or used Microsoft's trademarks, copyrights, packaging, and/or programs to place anything into the stream of commerce for which the "Consumer Warning" was intended to warn against. The inclusion of the "Consumer Warning" is yet another example of a "shotgun pleading" – the inclusion of conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.[10]

### iii.   *The listing of trademarks and service marks.*

Plaintiff's Complaint includes a detailed description of various programs manufactured by Microsoft and an itemized listing of trademarks and service marks including "Flag Design," "Windows 8 Packaging," "Video Tile," "Sports Tile," "Maps Tile," "Games Tile," "Charm Bar," Camera Tile," "Music Tile," Messaging Tile," "Sports Tile," etc. (at ECF No. [1], pp. 8 thru 10, paragraphs 16(a) thru 16(gg)).   And while the list is impressive in its sheer volume alone, there is no correlation between these marks to Plaintiff's allegations against any of the Defendants.   The voluminous list and the need for a respondent and this Court to discern each and every mark as a "fact" giving rise to any cause

---

[10]    We observe further, the alleged counterfeit scheme suggested by the FBI is contrary to Microsoft's asserted analysis which alleges Defendants attempted to activate authorized product keys more than once, sold stolen - but original product, and activated product keys originally intended for some other geographic region. (ECF No. [1], p. 15).   Certainly Microsoft's cyber forensic analysis would have produced information supporting counterfeiting. Again, another proverbial "goose chase."

**COLE, SCOTT & KISSANE, P.A.**
LAKESIDE OFFICE CENTER, SUITE 500  - 600 NORTH PINE ISLAND ROAD  - PLANTATION, FLORIDA 33324 (954) 473-1112 (954) 474-7979 FAX

of action is yet another example of "shotgun pleading" - the inclusion of "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action."

### iv.   *The Refurbisher Program*

The inclusion of references to Microsoft's refurbisher programs is another example of Plaintiff's "shotgun pleading."

Microsoft alleges there are two (2) refurbisher programs: "MAR" and "RRP." ECF No. [1], p. 11.  "MAR" stands for "The Microsoft Authorized Refurbisher Program" and is intended for "refurbishers" who ship an average of 1,000 refurbished personal computers per month. *See*, Exhibit G.  Nowhere within the Complaint does Plaintiff suggest that "Linked-PC" was a "MAR" program participant. Why Microsoft references the program at all as a fact supporting its claim against Defendants is unknown.

"RRP" stands for "Microsoft Registered Refurbisher Program" and is for "small to medium-sized refurbishers." *See,* Exhibit H.  We attached Exhibit C because we believe is the applicable contract for the "RRP." Again, why this program is referenced is unknown. The Court will be hard-pressed to find any allegation in Counts I thru V regarding violations of the contract – which is interesting – because if "Linked-PC" was a party thereto the parties agreed to "choice of law, jurisdiction and venue" and this honorable Court lacks jurisdiction. Exhibit C, p. 12.

**COLE, SCOTT & KISSANE, P.A.**

LAKESIDE OFFICE CENTER, SUITE 500  - 600 NORTH PINE ISLAND ROAD  - PLANTATION, FLORIDA 33324 (954) 473-1112 (954) 474-7979 FAX

### v.  The "COA Labels."

In paragraphs 44 and 45 of the Complaint, Microsoft details a U.S. Customs and Border Protection ("CBP") seizure of labels. This is another example of Plaintiff's "shotgun pleading" or the inclusion of "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" concerns.  ECF No. [1] at p. 16.  To-wit;

Federal Law defines the term "traffic" to mean;

*[t]o transport, transfer, or otherwise dispose of, to another, for purposes of commercial advantage or private financial gain, or to make, import, export, obtain control of, or possess, with intent to so transport, transfer, or otherwise dispose of.*

18 U.S.C.S. § 2320(f)(5). Plaintiff's Third Claim asserts "Defendants knowingly transported, transferred, or otherwise disposed of counterfeit or illicit Microsoft COA labels to other persons for purposes of commercial advantage or private financial gain."  ECF No. [1], p. 19, para. 65.  Plaintiff asserts their agent bought a computer from "Linked-PC" (not the Individual Defendants) and shipment included a "counterfeit COA label." *Id*. at. P. 15, para. 40.

Why does the Plaintiff then discuss a shipment of COA labels at paragraphs 44 and 45? There is only pled a cause of action for "disposal" "to another," The first-half of 18 U.S.C.S. § 2320(f)(5).  There is no cause of action pled for trafficking as in "importing," which is the second-half of 18 U.S.C.S. § 2320(f)(5).

If Count III is a cause of action for "trafficking" as it relates to the seized shipment, then Count III should be dismissed for failing to state a cause of action because it contains merely threadbare conclusory statements which fail to give rise to the alleged trafficking.

The third claim also fails on its face because it does not specify whether the intercepted labels were counterfeit or illicit. ECF No. [1], p. 19, para. 65. According to the statue a "counterfeit" label is a label that appears to be genuine, but is not. See §2318(b)(1). By definition, however, a label is only "illicit" if it is "genuine." See §2318(b)(1).  As such, the offending label must be either genuine or counterfeit.  Yet, in its third claim, Plaintiff alleges that the labels were one or the other when it should know and allege with specificity the type of offensive label it claims was being trafficked by "Linked-PC" and the individual Defendants.  *Microsoft Corp. v. Pronet Cyber Techs., Inc.*, 593 F. Supp. 2d 876, 886-887 (E.D. Va. 2009)(distinguishing partial summary judgement for "counterfeit" labels but not for "illicit" labels).

### vi. *The sin of asserting conclusory allegations without conversely providing supporting factual basis.*

Microsoft's Complaint provides that "Defendants knowingly transported, transferred, or otherwise disposed of counterfeit or illicit Microsoft COA labels to other persons for purposes of commercial advantage or private financial gain." ECF No. [1], pp. 19, paragraph 65.  Yet nowhere in the general allegations does Microsoft plead any fact that would support that "Linked-PC" or the Individual Defendants transported, transferred or otherwise disposed the offensive labels to other people.  Here, Microsoft commits the sin of asserting conclusory allegations without conversely providing supporting factual basis.

In Count III, Microsoft would like this Honorable Court to jump to the conclusion of trafficking based on its assertion that the U.S. Customs and Border Protection ("CBP") seized a shipment of labels in Alaska. ECF No. [1], pp. 16, paragraphs 44 and 45. The fact that the labels may have been destined for delivery to "Linked-PC" is not evidence that

**COLE, SCOTT & KISSANE, P.A.**
LAKESIDE OFFICE CENTER, SUITE 500  - 600 NORTH PINE ISLAND ROAD  - PLANTATION, FLORIDA 33324 (954) 473-1112 (954) 474-7979 FAX

"Linked-PC" and/or the Individual Defendants knowingly, intentionally ordered labels it knew were counterfeit or illicit.  18 U.S. Code § 2318 requires *actual knowledge* that the labels were counterfeit.

Nor, the fact that the labels may have been destined for delivery to "Linked-PC," demonstrates that "Linked-PC" upon receipt of counterfeit labels intended to distribute them. Here, Microsoft has not plead any demonstrative fact that Linked-PC or the Individual Defendants had the requisite knowledge that the labels were counterfeit or illicit.  Instead, Microsoft simply asserts conclusory allegations without conversely providing supporting factual basis.  This is yet another example of Microsoft's Complaint as a "shotgun pleading."

Additional evidence of conclusory allegations (as well as confusing allegations) pled is demonstrated with Microsoft's inclusion of the "RRP" program.  Again, Microsoft asserts "Linked-PC," was an associated "Eligible Refurbisher" and participant in that program. ECF No. [1] at p. 14, para. 38. A review of Exhibit C suggest the very behavior which Defendants are alleged to have improperly engaged in – is actually demanded by Microsoft under the "RRP." To-wit; a "Qualified PC," must have an "original valid COA" affixed to the personal computer sold OR the refurbisher must "place a sticker of its own design and manufacture over the product key on the pre-existing COA" OR the refurbisher must "affix the Program COA to the printed document that provides the Product Key."  Microsoft alleges Defendants created their own labels – but they were supposed to create their own label under the guise of this program. This pleading constitutes the sin of "asserting conclusory allegations without conversely providing supporting factual basis" and/or providing conflicting factual basis. The Complaint is a "shotgun pleading."

**COLE, SCOTT & KISSANE, P.A.**
LAKESIDE OFFICE CENTER, SUITE 500  - 600 NORTH PINE ISLAND ROAD  - PLANTATION, FLORIDA 33324 (954) 473-1112 (954) 474-7979 FAX

d. **Examples of the sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against**.

> i. *There are three distinct defendants.  Plaintiff recognizes and then ignores that fact.*

There are three (3) distinct and different defendants. Without exception, Microsoft accuses all three of jointly and severally engaging in tortious conduct including conduct for which no cause of action is pled (as described above). This alone, constitutes the sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

> ii. *The attempt to pierce the corporate veil should be rejected.*

Microsoft's election to commit the sin of asserting multiple claims without specifying which acts or omissions the individual defendants are responsible is also nothing less than an impermissible attempt to pierce the well-settled principle that a shareholder and/or an officer of a corporation is separate from the corporate entity. Microsoft correctly asserts that Defendant, "Linked-PC," is a Florida Corporation and that its incorporators and/or officers and directors are the individual defendants, Messrs. Saavedra. However, "[a] general principal of corporate law is that a corporation is a separate legal entity, distinct from the persons comprising them." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008).  For an individual Defendant to be personally liable for any of Plaintiff's claims, the Plaintiff must plead and meet Florida's high standard for piercing the corporate veil.  The Florida Supreme Court has provided that "the corporate veil will not be penetrated either at law or in equity unless it is shown that the corporation was organized or employed to mislead

**COLE, SCOTT & KISSANE, P.A.**
LAKESIDE OFFICE CENTER, SUITE 500 - 600 NORTH PINE ISLAND ROAD - PLANTATION, FLORIDA 33324 (954) 473-1112 (954) 474-7979 FAX

creditors or to work a fraud upon them." *Dania Jai Alai Palace Inc. v. Sykes*, 450 S.Ct. 1114, 1119 (Fla. 1984).

To pierce the corporate veil, the burden is on the Plaintiff.  They must prove both that "the corporation is a mere instrumentality or alter ego of the defendant, and that the defendant engaged in improper conduct in the formation or use of the corporation." *Oginsky v. Paragon Props. Of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1373 (S.D. Fla. 2011). In this case, Plaintiff failed to even allege these factors.  Instead, Microsoft simply comingles the Corporate Defendant, "Linked-PC," with the Individual Defendants as the parties responsible for all of the alleged wrongful acts.

Plaintiff admits that it was "Linked-PC" that sold it a refurbished computer.  ECF No. [1], p. 14, para. 36.  Plaintiff alleges that through its website, "*Defendants advertised, marketed, and sold refurbished computes that contained infringing and unlicensed Microsoft software.*" As such, Plaintiff comingles the alleged wrongdoings of "Linked-PC" with the Individual Defendants as though they are one in the same.   However,

> [e]very corporation is organized as a business organization to create a legal entity that can do business in its own right and on its own credit as distinguished from the credit and assets of its individual stockholders. The mere fact that one or two individuals own and control the stock structure of a corporation does not lead inevitably to the conclusion that the corporate entity is a fraud or that it is necessarily the alter ego of its stockholders to the extent that the debts of the corporation should be imposed upon them personally. If this were the rule, it would completely destroy the corporate entity as a method of doing business and it would ignore the historical justification for the corporate enterprise system.

*Dania Jai-Alai Palace, Inc. v. Sykes,* 450 So. 2d 1114, 1120 (Fla. 1984).

Plaintiff never entered into any business agreement with the Individual Defendants personally.   Yet, Plaintiff chooses to ignore the corporate form to sue the Individual

**COLE, SCOTT & KISSANE, P.A.**
LAKESIDE OFFICE CENTER, SUITE 500  - 600 NORTH PINE ISLAND ROAD  - PLANTATION, FLORIDA 33324 (954) 473-1112 (954) 474-7979 FAX

Defendants presumably on the thread bare basis and allegation that the Individual Defendants "owned and operated "Linked-PC." ECF No. [1], p. 2, para. 4 and 5.  Plaintiff further alleges that the Individual Defendants "had the right and ability to supervise, direct and control the wrongful conduct alleged in this Complaint, and derived a financial benefit from that wrongful conduct" as the basis for imposing liability on the Individual Defendants. *Id*.  This allegation is merely conclusory and does not meet the pleading standard imposed by Florida law for piercing the corporate veil.

The mere fact that the Individual Defendants owned and operated the company, however, does not, without more, create personal liability. The law is clear that the mere ownership of a corporation by a few shareholders, or even one shareholder, is an insufficient reason to pierce the corporate veil. *Lipsig v. Ramlawi,* 760 So. 2d 170, 187 (Fla. 3d DCA 2000).

> "[E]ven if a corporation is merely an alter ego of its dominant shareholder or
> shareholders, the corporate veil cannot be pierced so long as the corporation's
> separate identity was lawfully maintained." *Id.*

Plaintiff's complaint is wholly lacking the pleading requirements for veil piercing and merely provides conclusory allegations that comingle "Linked-PC" with the Individual Defendants as though they are one in the same. The Supreme Court has explained "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly at 555.* Here, Plaintiff fails to allege any facts establishing "Linked-PC" is a mere instrumentality or alter ego of the Individual Defendants.

### III.     MICROSOFT'S REQUEST FOR INJUNCTIVE RELIEF IS PREMATURE FOR ITS FAILURE TO COMPLY WITH CONDITIONS PRECEDENT.

Microsoft's failure to comply with Fed. R. Civ. P. 9 mandates dismissal.  To-wit; as pled, Microsoft asserts "Linked-PC" is/was an authorized participant in its "RRP" refurbisher program. ECF No. [1], p. 14, para. 38.

Exhibit C is the "RRP" which we believe exists between the parties.  As noted above, the "RRP" includes a forum selection clause providing that the "federal courts in Washington State or New York State are the exclusive venue for all disputes arising from this agreement."  Exhibit C. p. 12, §8.1.  In this case, Microsoft specifically seeks injunctive relief.  ECF No. [1] at pp. 23 thru 25.

Section 8.2 specifically provides "If MS pursues injunctive relief in a forum other than the defined Jurisdiction, MS will give prior notice to Refurbisher."  "MS" means Microsoft. Exhibit C, p. 1.

Microsoft did not plead compliance with any conditions precedent.  In this case, Plaintiff did not advise the Court of any "notice."

> *In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity." Fed. R. Civ. P. 9(c). Should a defendant make that denial, "[t]he plaintiff then bears the burden of proving that the conditions precedent, which the defendant has specifically joined in issue, have been satisfied."*

*Myers v. Cent. Fla. Invs., Inc.*, 592 F.3d 1201, 1224 (11th Cir. 2010), *citing to, Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982).

## IV. CONCLUSION.

Microsoft's Complaint for Damages and Injunctive Relief should be dismissed. The Complaint is a typical example of a "shotgun pleading." In this copyright and trademark infringement case, Microsoft has invited the Court to consider facts which have nothing to do with claimed violations of contract and/or law.  Microsoft has also pled a Complaint which, on its face, violates the Individual Defendants corporate veil and has failed to plead conditions precedent.

**WHEREFORE**, the Complaint fails to state a cause of action and the Complaint should be dismissed.

Respectfully submitted,

s/ Peter D. Weinstein
Peter D. Weinstein
Fla. Bar No. 0913502
**COLE, SCOTT & KISSANE, P.A.**
*TRIAL COUNSEL for Defendants*
Lakeside Office Center, Suite 500
600 North Pine Island Road
Plantation, Florida 33324
Telephone (954) 343-3929
Facsimile (954) 474-7979
Primary e-mail: peter.weinstein@csklegal.com
Secondary e-mail: karen.henley@csklegal.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this May 7, 2018, a true and correct copy of the foregoing Motion to Dismiss has been furnished by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

s/ Peter D. Weinstein
Peter D. Weinstein
Fla. Bar No. 0913502
**COLE, SCOTT & KISSANE, P.A.**

**COLE, SCOTT & KISSANE, P.A.**
LAKESIDE OFFICE CENTER, SUITE 500  - 600 NORTH PINE ISLAND ROAD  - PLANTATION, FLORIDA 33324 (954) 473-1112 (954) 474-7979 FAX