UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICROSOFT CORPORATION, a
Washington corporation,

               Plaintiff,

    v.

LINKED-PC, INC., a Florida corporation,
JULIO D. SAAVEDRA, an individual, and
ANDRES D. SAAVEDRA, an individual,

               Defendant.

Case No. 2:18-cv-00121-SPC-MRM

## PLAINTIFF MICROSOFT CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Plaintiff Microsoft Corporation ("Microsoft") submits the following response in opposition to the Motion to Dismiss filed by a computer distributor Linked-PC, Inc. ("Linked-PC") and its sole directors and officers, Julio Saavedra and Andres Saavedra ("Individual Defendants") (collectively "Defendants").

## I.      INTRODUCTION

Microsoft brought this lawsuit against Defendants for infringing and misusing Microsoft's intellectual property. Software activation data (referred to by Microsoft as "cyberforensics") from Defendants' IP addresses demonstrates that Defendants installed and activated thousands of unlicensed copies of Microsoft software. Additionally, in August 2017, Defendants sold a Microsoft investigator a refurbished computer that contained an unlicensed copy of Microsoft software. Defendants also provided a counterfeit Microsoft Certificate of Authenticity ("COA") label in connection with the computer—in violation of federal law. Around the same time as Microsoft's test purchase, the U.S. Customs and Border Protection seized a shipment of 200 counterfeit

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

COA labels from China that were destined for Linked-PC.  Further, and in order to sell their unlicensed software, Defendants made numerous false representations to their customers that they were selling genuine Microsoft software when they were not.  As a result of their unlawful conduct, and as alleged in Microsoft's Complaint, Defendants are liable for copyright and trademark infringement, violations of the Anti-Counterfeiting Act (18 U.S.C. § 2318), and various Lanham Act violations (15 U.S.C. § 1125(a)).

Defendants filed a motion to dismiss under Rule 12(b)(6), but they do not seriously challenge the sufficiency of Microsoft's claims against them.  Defendants, instead, resort to distractions and red herrings.  First, Defendants argue that Microsoft's Complaint is an impermissible "shotgun" pleading, but Defendants entirely ignore the detailed allegations regarding Defendants' unlawful copying, installation, and activation of Microsoft software.  Second, Defendants argue that Microsoft's Anti-Counterfeiting Act claim is insufficiently pled, despite the allegation that Defendants sold Microsoft's investigator a counterfeit COA label.  Third, Defendants argue that the corporate form shields the Individual Defendants from liability, but ignore the well-established principles that corporate directors, officers, and employees can be held personally liable for the intellectual property claims at issue in this case.  Fourth, Defendants argue that Microsoft's claims should be dismissed for failing to plead a contractual condition precedent, but fail to mention that the referenced contract was not in effect at the time Microsoft filed this lawsuit.  The Court should deny Defendants' motion.

## II.    FACTS

As Defendants' brought their motion under Rule 12(b)(6), the Court must take Microsoft's factual allegations as true and draw all reasonable inferences in Microsoft's favor.  *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016).  Accordingly, the below facts are taken from Microsoft's Complaint.

Plaintiff's Opp. to Defendants' Motion to
Dismiss (2:18-cv-00121-SPC-MRM) - 2

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

A.      **Microsoft's Software and Product Activation**

Microsoft has developed a number of industry leading software programs, including relevant to this case, Windows 7, Windows 8.1, Windows 10, and Office 2013 (together, the "Microsoft Software").  Compl. ¶ 15.  Microsoft uses numerous trademarks and service marks to advertise, market, and distribute the Microsoft Software, including relevant to this case, the 33 marks identified in the Complaint (together, the "Microsoft Trademarks").  *Id*. ¶ 16.  The Microsoft Trademarks are used within the Microsoft Software, and are critical to identifying the software as originating from Microsoft.  *See id*. ¶¶ 16, 37, 55–58.

Microsoft licenses the Microsoft Software; it does not sell the Microsoft Software. *Id*. ¶ 14.  Microsoft distributes the licensed Microsoft Software through a number of different sales channels.  *See id*. ¶¶ 17–25.  The scope of the licenses for the Microsoft Software varies by sales channel.  *See id*.

The Microsoft Software is technically capable of being installed on an unlimited number of devices, and therefore, Microsoft uses a number of techniques to ensure the software is being used in accordance with the applicable licenses.  *Id*. ¶¶ 26, 28. Microsoft's activation process is one of the main barriers used, whereby, relevant here, Microsoft requires either manufacturers or users to activate the Microsoft Software using a 25-character alphanumeric string generated by Microsoft (called the "product activation key" or "product key").  *Id*. ¶¶ 26–27.  A product key is not a license; it is merely a tool to help Microsoft protect its intellectual property.  *Id*. ¶ 29.

The misuse of product keys to activate software for which the activator has not purchased the appropriate license is a common form of software piracy.  *Id*. ¶ 30. Software piracy—the unauthorized copying, downloading, and distribution of software— is a serious problem costing developers like Microsoft billions of dollars in annual revenue.  *Id*. ¶ 10.  It also harms the end-consumer because unlicensed software can pose

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

cybersecurity risks to consumers.  *Id*. ¶¶ 10–12.  Consumer harm directly hurts Microsoft's reputation and is a material consequence of software piracy.  *See id*.

> **B.** **Defendants Linked-PC, Julio Saavedra, and Andres Saavedra**

Defendant Linked-PC is a Florida corporation that sells computers pre-installed with Microsoft software through multiple online sales channels, including Amazon.com and eBay.  *Id*. ¶¶ 35–36.  Defendants Julio Saavedra and Andres Saavedra are Linked-PC's sole directors and officers.  *Id.* ¶¶ 4–5.

From March 2014 through October 2016, Linked-PC was a member of Microsoft's Registered Refurbisher Program ("RRP").  *Id*. ¶ 38.  Microsoft's RRP is one of two Microsoft refurbisher programs; the other is Microsoft's Authorized Refurbisher ("MAR") program.[1]  *Id*. ¶¶ 22–25.  Both programs provide numerous benefits to members, including the opportunity to acquire software at lower prices than non-members.  *See id*.  Both programs also allow members to advertise their affiliation with the program to customers, which is governed by various licensing agreements with Microsoft.  *See id*.  Contrary to Defendants' assertion in their motion, Linked-PC's membership in the program lapsed in October 2016, and from that date forward, it was *not* an RRP member.  *Id*. ¶ 38.

> **C.** **Defendants' Infringement of Microsoft's Intellectual Property**

The heart of Microsoft's claims for copyright infringement (First Claim), trademark infringement (Second Claim), and violations of § 1125(a) of the Lanham Act (Fourth and Fifth Claims) is Defendants' copying and distribution of unlicensed Microsoft Software.[2]  Microsoft's strong evidence against Defendants (as alleged in detail in the Complaint) falls into two groups.

---

[1]  The difference in the programs is mainly the volume of sales, with the RRP being for companies that sell a lower volume of refurbished machines.  *Id*. ¶¶ 24–25.

[2]  Microsoft's Third Claim is discussed in the following section.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

First, Microsoft's proprietary analysis of Defendants' activation data—namely, its "cyberforensics"—demonstrates that Defendants unlawfully copied, installed, and activated thousands of copies of unlicensed Microsoft Software.  *Id.* ¶¶ 32–34, 41–43. As part of the software activation process, Microsoft captures a number of data points, including the activator's IP address and the product key used.  *Id.* ¶ 33.  Through an analysis of data connected to Defendants,[3] Microsoft determined that Defendants activated or attempted to activate copies of the Microsoft Software using a variety of product keys from numerous Microsoft distribution channels, including product keys that were stolen from Microsoft's supply chain, that were not authorized for use in the United States, and that were used more times than allowed by Microsoft's software licenses.  *Id.* ¶ 42.  All of this activation data demonstrates that Defendants copied, installed, and activated unlicensed Microsoft software.  *Id.* ¶ 43.

Second, on August 10, 2017, Microsoft coordinated a test purchase of a computer from Defendants.  *Id.* ¶ 39.  Defendants advertised this computer as being installed with a genuine copy of Windows 7, but the computer actually contained an unlicensed copy of Windows 7.  *Id.* ¶¶ 39–40.  Specifically, the computer was hard disk loaded, which is a common piracy technique where multiple copies of an operating system are created and unlawfully installed on numerous devices using a single software image.  *Id.* ¶ 31.  This test purchase further confirms the significant unlawful conduct shown by Microsoft's cyberforensics.

### D.      Defendants' Use of Counterfeit COA Labels

Similarly, Microsoft's claim for violations of the Anti-Counterfeiting Act (Third Claim) depends on conduct relating to Defendants' installation of pirated software.  One

---

[3]  The activation data is connected to Defendants through IP addresses 73.28.34.136 and 73.156.69.83, which were assigned to and used by Defendants during the time periods relevant to this case.  *Id.* ¶ 41.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

of the requirements for companies selling refurbished computers with new copies of Microsoft Windows software—as Defendants were doing—is to permanently affix a new COA to the refurbished device before distributing to the customer. *Id.* ¶ 23. The p COA label enables the customer a means to verify the genuineness of the Microsoft software pre-installed on the device. *Id.* ¶ 64.

Microsoft's evidence demonstrates that Defendants were using counterfeit COA labels in order to deceive consumers into believing their software was genuine. The computer Microsoft's investigator test purchased from Defendants, and which Defendants shipped to Microsoft's investigator, came with a counterfeit COA label. *Id.* ¶ 40. The product key on the COA did not match the product key used to install the software on the device—which is further indication that the software on the device was not genuine.[4] *Id.* Additionally, on August 15, 2017, the U.S. Customs and Border Protection seized a shipment of 200 counterfeit COA labels that were destined for Linked-PC. *Id.* ¶¶ 44–45.

## III.    ARGUMENT

Defendants bring their motion under Rule 12(b)(6), but they assert only limited challenges to the legal sufficiency of Microsoft's actual claims. Instead, they spend the vast majority of their motion nit-picking sentences from Microsoft's Complaint in an attempt to convince the Court it is an impermissible "shotgun" pleading. This argument fails. Microsoft's Complaint contains specific factual allegations centering on Defendants' unlawful copying, installation, and sale of Microsoft Software. Apart from their "shotgun" pleading arguments, Defendants directly challenge (1) the sufficiency of Microsoft claims under 18 U.S.C. § 2318 for trafficking in counterfeit COA labels, (2)

---

[4] The COA label that Defendants shipped was not even a counterfeit of the correct label. It was a counterfeit version of a COA label used by an OEM—not the COA label that should have been used by an RRP member.

Plaintiff's Opp. to Defendants' Motion to
Dismiss (2:18-cv-00121-SPC-MRM) - 6

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

the sufficiency of Microsoft's claims against the Individual Defendants; and (3) Microsoft's alleged failure to plead a condition precedent. All of these arguments are without merit for the reasons discussed below. Accordingly, the Court should deny Defendants' motion and allow this case to proceed to discovery.[5]

### A.      Legal Standard

Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In addition to accepting the factual allegations as true, a court must draw all reasonable inferences in a plaintiff's favor. *Bailey*, 843 F.3d at 480.

### B.      Microsoft's Complaint Is Not a "Shotgun" Pleading

Defendants filed a motion to dismiss under Rule 12(b)(6), but the thrust of their motion is that Microsoft's Complaint constitutes an "impermissible 'shotgun pleading'" and should be dismissed solely on that basis.[6] *See* Dkt. 27 ("Mot.") at 2. Defendants' argument ignores the substance of the federal pleading rules, let alone the policies and

---

[5]  Although the Court should deny Defendants' motion, if for any reason it grants Defendants' motion either in whole or in part, it should allow Microsoft the opportunity to amend its Complaint, as each issue raised by Defendants is curable through an amended pleading. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006) (proper remedy when plaintiff alleged sufficient facts is to "order[] repleading for a more definite statement of the claim" rather than "dismiss[] for failure to state a claim").

[6]  Tellingly, Defendants did not file a motion for more definite statement under Rule 12(e), suggesting they have no difficulty understanding Microsoft's claims. *See Weiland*, 792 F.3d at 1324 ("[T]his is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count. This may explain why the defendants did not move for a more definite statement under [Rule] 12(e) or otherwise assert that they were having difficulty knowing what they were alleged to have done and why they were liable for doing it.").

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

standards underlying the Eleventh Circuit's shotgun pleading jurisprudence.  Most importantly, it ignores Microsoft's actual allegations.  The Court should deny Defendants' motion because:  (1) Microsoft's Complaint is not a shotgun pleading; (2) dismissal would not serve the purposes of the rule against shotgun pleadings; and (3) Microsoft's allegations provide Defendants adequate notice of each claim.

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015); *see also Spector v. Suzuki Motor of Am., Inc.*, No. 2:17-cv-650-FtM-99CM, 2018 WL 691657, at *2 (M.D. Fla. Feb. 2, 2018) (citing *id*.).  A complaint is not a shotgun pleading merely because each count of the complaint re-alleges a common factual scenario recited earlier in the complaint.[7]  Rather, the question is whether "a reader of the complaint must speculate as to which factual allegations pertain to which count." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997); *see also Weiland*, 792 F.3d at 1324 (holding that complaint was not a shotgun pleading despite plaintiff's "re-alleging of paragraphs 1 through 49 at the beginning of each count"); *Abbasi v. Bhalodwala*, 149 F. Supp. 3d 1372, 1376 (M.D. Ga. 2015) ("[A]ll of the Plaintiff's counts are based on a common factual scenario, and each Defendant is purportedly liable under each count. Therefore, it is possible to determine which allegations of fact are intended to support which claims for relief, and dismissal [on the ground of shotgun pleading] is not warranted.").  A count in a complaint need not be "a model of efficiency or specificity"

---

[7]  This is distinguished from "the most common type" of shotgun pleading, where each count adopts *all* of the preceding allegations, including not only the factual allegations but also the conclusions of law in previous counts.  *See Weiland*, 792 F.3d at 1321.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

so long as it "adequately put[s] [the defendants] on notice of the specific claims against them and the factual allegations that support those claims." *Weiland*, 792 F.3d at 1325.

Here, Defendants argue that Microsoft's Complaint constitutes a "shotgun" pleading because it includes "conclusory, vague and immaterial facts not obviously connected to any particular cause of action." *See* Mot. at 2–4. To the contrary, the nucleus of Microsoft's facts is narrow and simple: Defendants unlawfully copied, installed, and sold pirated Microsoft software. As discussed below, Defendants' "shotgun" pleading argument ignores the specific and numerous allegations against them and rests on only a few cherry-picked factual allegations in Microsoft's Complaint.

First, Defendants point to two documents (a white paper and a FBI consumer alert) referenced in two background paragraphs in Microsoft's Complaint. *See* Mot. at 4–7; Compl. ¶¶ 10–11. Defendants do not challenge their general understanding of these paragraphs—that software piracy causes harm to consumers and developers—and they also do not challenge the paragraphs' relevancy to the case at issue. Paragraphs 10–11 are relevant because they describe the harms caused by software piracy in a case about software piracy. These allegations (among other things) help show the basis for Microsoft's activation program and its cyberforensics analysis. Instead, Defendants pull out short excerpts from *within* the documents referenced in this paragraph. However, none of the statements Defendants cite deprive "defendants [of] adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. A few statements within two documents referenced in Microsoft's Complaint do not render the entire Complaint a "shotgun" pleading.

Second, Defendants point to the listing of the Microsoft Trademarks in Paragraph 16 of the Complaint as further evidence of a "shotgun" pleading. Mot. 7–8. Defendants go so far as to argue that "there is *no correlation* between these marks to [sic] Plaintiff's

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

allegations against any of the Defendants." *Id*. at 7 (emphasis added).  But Microsoft has brought a claim against the Defendants for infringing these trademarks.  *See* Compl. ¶¶ 53–61 (Second Claim).  Demonstrating Microsoft's ownership and use of the Microsoft Trademarks forms the foundation of this claim (not to mention critical evidence to Microsoft's other Lanham Act claims).  Paragraph 37 of Microsoft's Complaint specifically alleges that Defendants used the Microsoft Trademarks, and Microsoft's Second Claim specifically incorporates the Microsoft Trademarks and alleges that Defendants infringed them.  *See id*. ¶¶ 37, 55–56.  It is simply nonsensical to argue that "no correlation" exists between the Microsoft Trademarks and the claims in this case.  Indeed, a stronger "correlation" is hard to imagine.

Third, Defendants cite to Microsoft's allegations regarding its refurbisher programs as another supposed basis for deeming Microsoft's Complaint a "shotgun" pleading.  Mot. at 8; Compl. ¶¶ 22–25.  Defendants argue that the inclusion of allegations about Microsoft's refurbisher program have no relevance to this case.  However, Microsoft's refurbisher programs are a critical distribution channel and licensing program for the Microsoft Software—a fundamental issue in the case.  In particular, Defendants' argument that the allegations about the RRP are immaterial is wrong.  Mot. at 8. Microsoft's Complaint explicitly alleges that Defendants "falsely advertised" they were members of the RRP, which is a critical element of Microsoft's Lanham Act claims. Compl. ¶¶ 38, 68–76.  Further, that Defendants were once members of this program speaks to (among other things) Defendants' knowledge about Microsoft's intellectual property, and is therefore relevant to Microsoft's claims and its damages.[8]

---

[8]  Defendants even (wrongly) argue for dismissal based on their former status as an RRP member, further showing the relevance of this program and Defendants' understanding of Microsoft's claims.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Microsoft's Complaint provides sufficient factual basis for Defendants to respond to the Complaint, which is the purpose of the rule against "shotgun" pleadings.  *Weiland*, 792 F.3d at 1323; *see also Spector*, 2018 WL 691657, at *2 (citing *Weiland*, 792 F.3d at 1323).  This purpose also ensures the parties and the Court have identified the specific issues in the case so as to "mark the boundaries for discovery."  *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1125–27 (11th Cir. 2014).  Microsoft's claims are well marked; they arise from Defendants copying, installing, and selling thousands of pirated versions of Microsoft Software containing the Microsoft Trademarks.  This litigation is in no danger of turning into a "discovery goat rodeo" if the Court fails to dismiss Microsoft's claims.  *Id.* at 1127.  Rather, dismissal would serve only to waste the resources of the parties and this Court by unnecessarily delaying Microsoft's prosecution of this case.  The Court should deny Defendants' motion.

### C.      Microsoft Alleges Strong Evidence That Defendants Trafficked in Counterfeit COA Labels in Violation of 18 U.S.C. § 2318

Though couched within Defendants' general argument that Microsoft's Complaint constitutes a "shotgun" pleading, Defendants set forth several arguments challenging the sufficiency of Microsoft's claim that Defendants violated 18 U.S.C. § 2318.  Defendants' arguments fail.  Microsoft has alleged more than sufficient facts to survive a motion to dismiss, and the Court should deny Defendants' motion.

The Anti-Counterfeiting Act, 18 U.S.C. § 2318, "prohibits the trafficking of counterfeit and illicit 'labels,' including 'labelling components' used by copyright owners to identify copies or computer programs and to verify that copies are not counterfeit or infringing."  *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-cv-561-WHO, 2017 WL 3485881, at *9 (N.D. Cal. Aug. 15, 2017).  To survive a motion to dismiss, Microsoft must plead sufficient factual allegations showing:  "(1) ownership of valid copyrights in the works at issue; (2) the [counterfeit labels] at issue are illicit or counterfeit; (3) the

Plaintiff's Opp. to Defendants' Motion to
Dismiss (2:18-cv-00121-SPC-MRM) - 11

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

defendant was aware of the facts that constitute the offense; and (4) the defendant trafficked in the [counterfeit labels] at issue." *Microsoft Corp. v. My Choice Software, LLC*, No. SA CV 16-2187-DOC (KESx), 2017 WL 5643210, at *5 (C.D. Cal. Oct. 10, 2017) (alteration in original) (quoting *Microsoft Corp. v. Buy More, Inc.*, 703 F. App'x 476, 479 (9th Cir. 2017)).

Microsoft has pleaded sufficient facts to show each element of the claim. Microsoft owns copyrights in the Microsoft Software (satisfying the first element). Compl. ¶¶ 15, 63. Microsoft alleges that Defendants used a counterfeit COA label in connection with the computer Defendants sold directly to Microsoft's investigator (satisfying the second and fourth elements). *Id.* ¶¶ 40, 65. Microsoft also alleges that Defendants did this "knowingly" (satisfying the third element). *Id.* ¶ 65; *cf. United States v. Pub. Warehousing Co. K.S.C.*, No. 1:05-cv-2968-TWT, 2017 WL 1021745, at *7 (N.D. Ga. Mar. 16, 2017) (holding that even under heightened Rule 9(b) standard, which does not apply here, knowledge can be pleaded generally); *Radiation Stabilization Sols. LLC v. Accuray Inc.*, No. 11-cv-07700, 2012 WL 3621256, at *4 (N.D. Ill. Aug. 21, 2012) ("While conditions of mind such as intent and knowledge may be alleged generally, the pleadings must still allege sufficient facts to support a reasonable inference of that state of mind.").[9] As further support that Defendants possessed the requisite knowledge, Microsoft's test purchased computer was installed with software using a product key that did not match the key printed on the counterfeit COA label.[10] *Id.* ¶ 40. Also, Defendants' shipment of 200 counterfeit COA labels for Windows 10 from

---

[9] *See also Data Dimensions, LLC v. Golino*, No. 6:17-cv-951-Orl-40KRS, 2018 WL 1305886, at *3 (M.D. Fla. Mar. 13, 2018) ("[P]leading on information and belief is permissible where the relevant facts are 'peculiarly within the possession and control of the defendant.'" (quoting *Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302, 1311 (S.D. Fla. 2011))).

[10] Moreover, the COA label that Defendants shipped was not even a counterfeit version of the type of COA label that should have been used; it was a counterfeit *OEM* COA label, not a counterfeit RRP label. An RRP label does not contain a product key.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

China was seized by the U.S. Customs and Border Protection.  *Id*. ¶¶ 44–45.  The fact that Defendants sought to obtain COA labels from China is further evidence that Defendants were aware they were using counterfeit COA labels.  Drawing all reasonable inferences in favor of Microsoft, this evidence is more than sufficient to plead an actionable claim against Defendants.

Despite these straightforward allegations, Defendants urge the Court to dismiss Microsoft's claim by misrepresenting Microsoft's allegations.  When discussing the seized COA labels, Defendants state that Microsoft "does not specify whether the intercepted labels were counterfeit or illicit."  Mot. at 10.  But the Complaint specifically pleads:  "Microsoft has determined that these COA labels are counterfeit."  Compl. ¶ 45.  Therefore, Defendants' distinction between a "counterfeit" and "illicit" label is a red herring built on a false premise.[11]  *See* Mot. at 10.  Defendants also state that:  "nowhere in the general allegations does Microsoft plead any fact that would support that 'Linked-PC' or the Individual Defendants transported, transferred or otherwise disposed [of] the offensive labels to other people."  *Id*.  This statement is wrong.  Microsoft specifically alleges that Defendants shipped to Microsoft's investigator a counterfeit COA label in connection with the test purchased computer.  Compl. ¶ 40.  The shipment of a counterfeit COA label with the computer Microsoft test purchased more than satisfies the definition of "traffic" in the statute.  *See* 18 U.S.C. § 2320(f)(5); *Microsoft Corp. v. Ion Techs. Corp.*, 484 F. Supp. 2d 955, 961 (D. Minn. 2007) (shipping labels alone sufficient for liability under § 2318).  Therefore, the argument Defendants attempt to make about the definition of "traffic" is also meritless.

---

[11]  Even if Microsoft hadn't alleged that the labels were counterfeit (which it did), this is still not a basis for dismissing Microsoft's claim.  *See Microsoft Corp. v. Pronet Cyber Techs., Inc.*, 593 F. Supp. 2d 876, 886-87 (E.D. Va. 2009) (allowing Microsoft, even on summary judgment, to develop evidence before trial about defendant's use of "illicit" labels to support § 2318 claim).

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Defendants also impermissibly divorce the seizure of counterfeit COA labels from the rest of the Complaint's allegations.  For example, in discussing the seizure of counterfeit labels, Defendants argue:  "Nor, the fact that the labels may have been destined for delivery to 'Linked-PC,' demonstrates that 'Linked-PC' upon receipt of counterfeit labels intended to distribute them."  Mot. at 11.  Defendants simply ignore Microsoft's other allegations.  Defendants trafficked in at least one counterfeit COA label by selling it to Microsoft's investigator.  Defendants are in the business of selling computers containing Microsoft software, and have installed thousands of copies of infringing software.  Defendants offer no explanation for why a computer distributor involved in software piracy would import 200 counterfeit COA labels for anything other than using them to authenticate that software.  Of course, if Defendants have such an explanation, they will have an opportunity to raise it during the course of this case.  But, at this stage of the proceeding, Microsoft's allegations are sufficient to draw the reasonable inference that Defendants intended to use the seized counterfeit COA labels with computers they sold to customers—actions that violated 18 U.S.C. § 2318.

Defendants' final argument is perhaps their most misplaced.  Defendants seem to argue that Microsoft's RRP agreement required Defendants to "create their own labels," and therefore the RRP agreement required Defendants to use counterfeit versions of Microsoft's COA label.  Mot. at 11.  This argument is both procedurally and factually wrong for several reasons.  First, the Court cannot even consider the RRP agreement because it was not contained or referenced in Microsoft's Complaint.  *See* Fed. R. Civ. P. 12(d) (courts must exclude "matters outside the pleadings" on a motion to dismiss).  Second, Defendants were not members of the RRP program in August 2017 when they sold the counterfeit COA label to Microsoft's investigator, or when the counterfeit COA labels were seized by law enforcement.  Compl. ¶¶ 38, 40, 44.  Therefore, the provisions

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

of the RRP agreement cited by Defendants have no relevance to Microsoft's Anti-Counterfeiting Act claim.  Third, Defendants misread the RRP agreement.[12]  It states that the "Refurbisher must permanently affix a *new* Program COA" to any machine sold.  *See* Dkt. 27-3 § 2.9 (emphasis added).  The agreement also says that a refurbisher may "mark through or place a sticker of its own design and manufacture over the product key on the *pre-existing* COA."  *Id.* (emphasis added).  That is, a refurbisher: (1) must use a new COA label; and (2) may obscure the product key on the COA that was already on the refurbished machine.  Nothing allows Defendants to use counterfeit COA labels—which Defendants unquestionably did.  The Court should deny Defendants' motion.

### D. Microsoft Has Alleged Facts Sufficient to Support Claims Against the Individual Defendants

Defendants argue Microsoft's claims against the Individual Defendants should be dismissed because Microsoft impermissibly attempts to pierce the corporate veil.  Mot. at 12–14.  This argument misapprehends the fundamental nature of the Individual Defendants' personal liability.  *See Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477–78 (11th Cir. 1991); *Special Purpose Accounts Receivable Co-op Corp. v. Prime One Capital Co.*, 125 F. Supp. 2d 1093, 1104 (S.D. Fla. 2000) ("While it is true that a director or an officer is not personally liable for any act or failure to act regarding corporate management or policy, it does not follow that the officer or individual is shielded from accountability for tortious conduct.").  The Individual Defendants can be personally liable (and jointly and severally liable) under at least two principals applicable to the facts of this case.[13]

---

[12]  Microsoft does not admit that the version of the RRP agreement Defendants provided is the complete version of the agreement, a version of the agreement that Defendants executed, or even a version of the agreement that would otherwise apply to Defendants' conduct.

[13]  These theories of liability apply equally to all of Microsoft's claims.  *See, e.g., Microsoft Corp. v. Buy More, Inc.*, 136 F. Supp. 3d 1148, 1157 (C.D. Cal. 2015), *aff'd*, 703 F. App'x 476 (9th Cir. 2017) (copyright infringement, trademark infringement and Anti-Counterfeiting Act claim); *Microsoft Corp. v.*

Plaintiff's Opp. to Defendants' Motion to Dismiss (2:18-cv-00121-SPC-MRM) - 15

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Under the theory of direct infringement, a corporate director, officer, or employee is personally liable for his own participation in the infringement.  *See, e.g.*, *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994) ("[A] corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil."); *Chanel*, 931 F.2d at 1477 ("If an individual actively and knowingly caused the infringement, he is personally liable.").  Direct liability can also extend to corporate officers who are the "guiding spirit" or "moving force" behind the infringing activities.  *See, e.g.*, *id.*; *Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1115 (C.D. Cal. 2010) ("Certainly, because Ron Petcha is a 'guiding spirit' behind IPTV's activities, including IPTV's alleged copyright infringement, the uncontroverted evidence establishes that he is liable for copyright infringement.").  It makes no difference whether the actionable conduct was undertaken in the individual's business capacity or personal capacity.  *See Digby Adler Grp. LLC v. Image Rent a Car, Inc.*, 79 F. Supp. 3d 1095, 1104–05 (N.D. Cal. 2015).

Under the theory of vicarious infringement, an individual can be held personally liable for infringement when they have "(1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017) (citation & internal quotation marks omitted), *cert. denied*, 138 S. Ct. 504 (2017); *Broad. Music, Inc. v. Joint Bar & Grill, LLC*, No. 12-21209-CV, 2012 WL 6933552, at *3 (S.D. Fla. Dec. 11, 2012) ("Plaintiff's identification of Barbosa as a manager of The Joint Bar & Grill with the right and ability to supervise the company and restaurant's activities, coupled with the

---

*Suncrest Enter.*, No. C 03-5424 JF (HRL), 2006 WL 1329881, at *8 (N.D. Cal. May 16, 2006) (Section 1125(a) claims).

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

allegation of her direct financial interest in the company, amounts to a sufficiently pled cause of action for vicarious liability."). "Vicarious liability rests not on the defendant's relationship to the direct infringement but rather on the defendant's relationship to the direct infringer." *Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F. Supp. 728, 732 (S.D.N.Y. 1996). "Knowledge of the infringing activity is not an element of vicarious liability; the doctrine is premised upon the theory that an individual who is in a position to police the conduct of a direct infringer, and whose economic interests are entwined with that of the direct infringer, should be held jointly liable for the infringement." *Suncrest Enter.*, 2006 WL 1329881, at *4.

In this case, Microsoft has alleged that the Individual Defendants are personally liable under the theories of both direct and vicarious liability. Compl. ¶¶ 4–5. The Individual Defendants are Linked-PC's sole directors and officers, *id.*, which would (at the very least) give them the ability to supervise the copying, installation, and sale of Microsoft software (i.e., the conduct giving rise to Microsoft's claims in this case), and a direct financial interest in the proceeds of any infringement. These allegations (accepted as true as the Court must on a motion to dismiss) render the Individual Defendants vicariously liable for of Microsoft's claims. Further, the Individual Defendants are also the only officers and employees of the company, and therefore they would have to directly participate in all acts of infringement at issue in this case. *See id.*; *Chanel*, 931 F.2d at 1477 ("Because of its very nature a corporation can act only through individuals."). As Linked-PC's sole directors, officers and employees, the Individual Defendants would also constitute the "guiding spirit" and "moving force" behind Linked-PC's actions. Their participation in the unlawful conduct at issue renders them directly liable for the infringement and other conduct alleged in Microsoft's Complaint.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Defendants also wrongly argue that Microsoft's Complaint is a "shotgun" pleading because it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." Mot. at 12. However, during the early stages of litigation, individualized allegations are not required if the complaint "can be fairly read to aver that all defendants are responsible for the alleged conduct." *Spector*, 2018 WL 691657, at *3 (quoting *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000)). Further, the Eleventh Circuit characterizes this type of "shotgun" pleading as "relatively rare," and generally involving over a dozen defendants who "could not have participated in every act complained of" due to "geographic and temporal realities." *Weiland*, 792 F.3d at 1323 & n.14 (collecting cases). That is not the case at hand. Here, Microsoft has identified each Defendant and their responsibilities, and Microsoft has averred that all Defendants are responsible for the conduct alleged in Microsoft's Complaint under viable theories of liability as to each. *See, e.g.*, Compl. ¶¶ 3–5. Where Defendants are a corporation and its sole directors and employees, it is impossible for Microsoft to know what act each individual Defendant did before Microsoft has an opportunity to take discovery. Importantly, Defendants possess all of the information necessary to understand the exact scope of each of their roles as it relates to the conduct at issue in this Complaint. Microsoft's Complaint, therefore, provides Defendants sufficient notice of the claims against them, and alleges sufficient facts to support those claims. Defendants' motion should be denied.

### E.   The RRP Agreement Does Not Bar Microsoft from Bringing Its Claims Before this Court

Finally, Defendants argue Microsoft's Complaint should be dismissed based on a notification requirement in the RRP agreement they attach to their motion. Mot. at 15. This argument fails because Linked-PC was *not* an RRP member at the time Microsoft filed suit. Compl. ¶ 38. Linked-PC was an RRP member from March 2014 to October

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

2016, but was not an RRP member from October 2016 onwards.  *Id.*  Linked-PC,
therefore, was not an RRP member for the nearly year and half before Microsoft filed
suit, and for all of the thousands of infringing activations that took place during that time
period.  Linked-PC was also not an RRP member in August 2017 when Defendants sold
Microsoft's investigator a computer loaded with infringing software and containing a
counterfeit COA label.  Defendants make no attempt to explain how the RRP agreement
would govern any of this conduct—and they cannot because it does not.  Microsoft also
has not brought any claim for breach of the RRP agreement.  Microsoft's claims do not
rest on Linked-PC's affiliation with the program; they, in fact, rest on Defendants' *false
representation* Linked-PC was an RRP member.  The Court should deny Defendants'
motion because Linked-PC was not an RRP member at the time Microsoft filed suit, and
the RRP agreement does not apply.

## IV.   CONCLUSION

For the reasons stated above, the Court should deny Defendants' Motion to
Dismiss.  In the alternative, the Court should grant Microsoft leave to amend its
complaint, as each of the issues Defendants raise is curable through an amended
pleading.

DATED this 20th day of June, 2018.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

*/s/* Bonnie E. MacNaughton
Bonnie E. MacNaughton (*admitted pro hac vice*)
James H. Wendell (*admitted pro hac vice*)
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
Tel: (206) 622-3150
Fax: (206) 757-7700
bonniemacnaughton@dwt.com

Plaintiff's Opp. to Defendants' Motion to
Dismiss (2:18-cv-00121-SPC-MRM) - 19

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

jamiewendell@dwt.com

*TRIAL COUNSEL for Plaintiff Microsoft Corp.*

HOLLAND & KNIGHT LLP
Joseph H. Varner, III, No. 394904
Kendyl B. Tash, No. 113144
100 North Tampa Street, Suite 4100
Tampa, FL 33602
Telephone:  (813) 227-8500
Facsimile:  (813) 229-0134
joe.varner@hklaw.com
kendyl.tash@hklaw.com

*Attorneys for Plaintiff Microsoft Corp.*

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 20, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF notification system which will send a notice of electronic filing to all parties registered to receive electronic filings in this case.

DATED: June 20, 2018

*/s/ Bonnie E. MacNaughton*
Bonnie E. MacNaughton

Plaintiff's Opp. to Defendants' Motion to
Dismiss (2:18-cv-00121-SPC-MRM) - 21

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax